IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STEPHEN M. MARTENS,
      Petitioner,

vs.                              Case No.:  3:07cv323/MCR/EMT

CHARLES HALLEY, WARDEN,
and WALTER A. McNEIL,[1]
      Respondents.
_____/

## ORDER, REPORT AND RECOMMENDATION

Petitioner initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1).  He subsequently filed an amended petition (Doc. 11).  Respondents filed an answer to the amended petition (Doc. 20), and Petitioner filed a reply (Doc. 23).  Also pending is Petitioner's motion for temporary restraining order (Doc. 25)

After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that neither an evidentiary hearing nor discovery is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief, and his pending motion should be denied.

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a state inmate currently incarcerated at Century Correctional Institution.  He challenges a prison disciplinary report (DR), Log #250-060073, he received at Hamilton Correctional Institution Annex on January 17, 2006, for the charge of possession of a weapon (Doc.

---

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

11 at 1).  As relief he seeks restoration of 360 days of gain time and criminal prosecution of the officers who discovered the weapon and filed the disciplinary charge (*id.* at 6).  Petitioner appealed the disciplinary decision through the administrative appeal process of the Florida Department of Corrections (DOC) (*id.* at 2).  He then challenged the DR by filing a petition for writ of mandamus in the Circuit Court in and for Leon County, Florida, but the state court denied the petition (*id.*).  Petitioner sought certiorari review by the Florida First District Court of Appeal, but review was denied on May 23, 2007, and Petitioner's motion for rehearing was denied on June 28, 2007 (*id.* at 3).

II.     STANDARD OF REVIEW

        Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams</u> <u>v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v.</u> <u>Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

---

[2]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.    PETITIONER'S CLAIMS

   A.    Ground one:  Insufficient evidence violates USSC Wolff due process, USSC Hill, protected by 14th Amend. U.S. Const.

Petitioner states that while he was working in the institutional library, approximately eighty (80) inmates had access to his mattress (Doc. 11 at 4). Petitioner states the fact that he was only one

of eighty inmates who had access to his mattress, by virtue of the fact that his cell door was open while he was at the library, constitutes insufficient evidence that he was in constructive possession of the knife found under his mattress (*id.*).

                1.        Clearly Established Supreme Court Law

In <u>Superintendent, Mass. Correctional Inst. v. Hill</u>, 474 U.S. 445, 455–56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985), the Supreme Court addressed the quantum of evidence necessary to support a prison disciplinary board's decision.  The Court held:  "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record."  <u>Hill</u>, 472 U.S. at 454 (citation omitted).  The court further explained:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced. . . ."  <u>United States ex rel. Najtauer v. Commissioner of Immigration</u>, 273 U.S. [103], 106, 47 S. Ct. [302], 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.*, 472 U.S. at 455 (citations omitted).

                2.        Federal Review of State Court Decision

Petitioner raised this claim of insufficiency of the evidence in his state mandamus petition (Doc. 20, Ex. O).  In the state court's written opinion denying the petition, the state court correctly identified the <u>Hill</u> standard as the controlling legal standard for evaluating sufficiency of the evidence claims concerning prison disciplinary actions (Doc. 20, Ex. R).  Because the state court applied the correct Supreme Court precedent, and the facts of <u>Hill</u> and Petitioner's case are not materially indistinguishable, Petitioner is not entitled to federal relief on any of his due process claims unless he demonstrates that the state court decision was based upon an unreasonable determination of the facts or was an unreasonable application of <u>Hill</u>.

The state court found as fact that the disciplinary team based its finding of guilt on the statement of facts included in the written disciplinary charge, which included Officer Morgan's statement that during a search of Petitioner's cell, a homemade weapon was found under his mattress

(*see* Doc. 20, Ex. R at 2).  The state court concluded that the officer's statement constituted sufficient evidence to support the disciplinary decision (*id.*).

The record supports the state court's determination that the disciplinary team based its decision on the statement of facts included in the Charging Disciplinary Report, which included the following statement by Officer Morgan:

> At approximately 1530 hrs on January 12, 2006 while assigned as inside grounds officer, myself [Officer Jackie R. Morgan] and C.O. P. Cunningham were conducting a cell search of F3217 which houses Inmate Martens, Stephen #028995 and Swisher, Neil #R37672, when I found a homemade weapon under Inmate Martens [sic] mattress.  The blade was approximately two and one fourth of an inch with a wooden handle approximately five inches for a total lenght [sic] of about seven and one fourht [sic] inches.  The weapon was confiscated, photographed and placed in storage.  Inmate Martens was not present during this search.

(Doc. 20, Ex. B).  The statement of Officer Morgan constitutes sufficient evidence under Hill to support the disciplinary decision.  *See* Hill, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *see also* Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation . . ."); Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993) (same). Therefore, Petitioner has failed to demonstrate that the state court's denial of his claim was unreasonable.

B.    Ground two:  Deprivation of written decision violates Wolff due process (USSC) protected by 14th Amend. U.S. Const.

Ground three:  Inadequate notice of charge violates USSC Wolff due process protected by 14th Amend. U.S. Const.

Ground four:  Deprivation to present Cunningham as witness (USCC Wolff) violates due process guaranteed by 14th Amend. U.S. Const.

Petitioner contends he was not provided sufficient advance notice of the charge because the charging document failed to state that eighty inmates had access to his mattress, failed to state that he was at work in the library from 1:00–3:30 p.m., and failed to document the chain of custody of the knife (Doc. 11 at 5).  Petitioner additionally states he requested that Officer Cunningham testify

in person at the hearing, but the disciplinary team denied his request (*id.*).  Petitioner states that Officer Cunningham could have testified that eighty inmates had access to his mattress, and that "an informant was used" (*id.*).  Petitioner also asserts he was never provided a copy of the disciplinary team's written decision, and his right to appeal was "thwart[ed]" by this error (Doc. 11 at 4).

      1.      Clearly Established Supreme Court Law

Where a prison disciplinary hearing may result in the loss of good time credits, the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), held that the inmate must receive:  (1) written notice of the charges brought against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken.  *Id.*, 418 U.S. at 564–66.

      2.      Federal Review of State Court Decision

In the state court's written opinion denying the petition, the state court correctly identified the Wolff standard as the controlling legal standard for evaluating procedural due process claims concerning prison disciplinary actions (Doc. 20, Ex. R).  Because the state court applied the correct Supreme Court precedent, and the facts of Wolff and Petitioner's case are not materially indistinguishable, Petitioner is not entitled to federal relief on any of his due process claims unless he demonstrates that the state court decision was based upon an unreasonable determination of the facts or was an unreasonable application of Wolff.

The state court determined that Petitioner received (1) advance written notice of the charges against him, (2) an opportunity, when consistent with institutional safety and correctional goals, to present witnesses and documentary evidence in his defense, and (3) a written statement by the fact finder of the evidence relied upon and the basis for the disciplinary action (*see* Doc. 20, Ex. R at 2).

Initially, Petitioner has failed to demonstrate that the notice of the charge was insufficient. The Charging Disciplinary Report included a description of the infraction with which Petitioner was charged and a citation to the specific rule that he was accused of violating; the date, time, and place of the infraction; a description of the facts supporting the charge; the officer reporting the infraction; and a description of the physical evidence and its disposition (Doc. 20, Ex. B).  Additionally, the

charging document indicated that Petitioner received notice of the charge on January 13, 2006, at 1500 hours, and the hearing was held nearly four days later on January 17, 2006 at 12:08 hours (*see* Doc. 20, Exs. B, J).  This was sufficient advance notice of the charge to alert Petitioner to the nature of the infraction with which he was charged and the conduct which formed the basis of the charge to enable him to prepare a defense.  Petitioner contends the charging document should have included additional facts, including the fact that eighty inmates had access to his mattress, that he was at work in the library from 1:00–3:30 p.m., and facts describing the chain of custody of the knife, beyond the fact that it was confiscated, photographed, and placed in storage; however, these facts were not necessary to alert him to the nature of the charge and the facts supporting it, which is all that is constitutionally required under <u>Wolff</u>.  Therefore, the state court's denial of Petitioner's challenge to the sufficiency of the notice was not unreasonable.

Petitioner has also failed to demonstrate a due process violation with regard to the disciplinary team's failure to call Officer Cunningham as a live witness at the hearing.  In <u>Wolff</u>, the Supreme Court held that an inmate does not have an unqualified right to call witnesses and present documentary evidence on his behalf at a prison disciplinary hearing, and decisions regarding whether a witness is called to testify and whether an inmate's access to other inmates to collect statements or to compile other documentary evidence rests in the sound discretion of prison officials. 418 U.S. at 566–67 (also noting that although it would be useful for prison officials to state their reason for refusing to call a witness, whether it be irrelevance, lack of necessity, or the hazards presented in individual cases, prison officials were not required to do so).  The Court additionally held that inmates do not have a constitutional right to confront and cross-examine adverse witnesses, and the decision whether to permit cross-examination rests in the sound discretion of prison officials. *Id.* at 567–69.

The DOC regulations regarding the calling of witnesses by inmates provide as follows:

(c) The testimony of witnesses requested by the charged inmate shall be presented at the hearing through the written Witness Statement, Form DC6-112C, unless the inmate:

      1.  Has completed and signed the witness request form during the investigation;

     2.  Makes a request at the hearing for a witness to appear to provide live testimony; and

     3.  The disciplinary team or hearing officer determines that the reason provided by the charged inmate for requesting live testimony overcomes the burden on institutional staff caused by the retrieval and escort of live witnesses as well as the diversion of security staff from assigned posts due to the potential security risk that may result from the appearance of live inmate witnesses and the disruption to the assignments and activities of inmate witnesses.

(d) Failure to sign and complete the witness disposition form, DC6-112B, during the investigation constitutes waiver of the opportunity to call witnesses either live or by written statement. . . .

(e) Additional witnesses.  A request for an additional witness who was not listed on the witness request form will be granted if the inmate makes the request at hearing for the additional witness, the expected testimony proffered by the charged inmate indicates that the testimony is material, relevant, and non-repetitive and the inmate presents extraordinary circumstances which prevented him from naming the witness during the investigation.  The testimony of the additional witness shall be presented by written statement unless the procedure of paragraph 33-601.307(3)(c), F.A.C., is followed.
. . . .
(j) The charged inmate shall not be permitted to question or cross examine witnesses during the hearing.

Fla. Admin. Code 33-601.307(3).

     In the instant case, the record shows that during the investigation of the charge, Petitioner was provided an opportunity to list material witnesses on the Witness Disposition form, and the form advised him that his failure to complete and sign Section II of the form would result in a waiver of the opportunity to call witnesses either live or by written statement (*see* Doc. 20, Ex. F).  Petitioner did not list any witnesses (*id.*).  Furthermore, the disciplinary team's reason for denying Petitioner's request to call Officer Cunningham as a live witness was that the live testimony was unnecessary, as evidenced by the team's response included in the denial of Petitioner's appeal of the disciplinary decision (*see* Doc. 20, Ex. L).  Moreover, as previously discussed, Petitioner did not have a constitutional right to confront and cross-examine Officer Cunningham.  Therefore, the team's failure to call Officer Cunningham as a witness did not violate Petitioner's due process rights.

Petitioner has also failed to establish a due process violation with regard to his failure to receive a copy of the disciplinary team's written decision.  Assuming the truth of Petitioner's statement that he did not receive a copy of the written decision until after he filed the mandamus action in state court, the purpose of the requirement that the disciplinary team provide a written statement of the evidence relied upon and the reasons for the disciplinary action taken, articulated by the Supreme Court in Wolff, was fulfilled.  As stated in Wolff, the purpose of this requirement is to protect the inmate against collateral consequences based on a misunderstanding of the nature of the proceeding, and to help ensure that prison administrators, faced with possible scrutiny by state officials, the public, and the courts, will act fairly.  Wolff, 418 U.S. at 565.  In the instant case, the record shows that the disciplinary team prepared a written decision which explained that the reason for forfeiture of 360 days of Petitioner's gain time and his placement in disciplinary confinement for sixty days was Petitioner's possession of a weapon, and that the evidence upon which it relied was the statement of facts provided by one of the officers who discovered a knife under Petitioner's mattress (see Doc. 20, Ex. J).  Therefore, the written statement was sufficient under Wolff.

Additionally, even if Petitioner was not provided a copy of the written decision until five months after it was issued, he does not allege how his ability to present his administrative and judicial appeals was prejudiced in any way.  The record shows that prior to the disciplinary hearing, Petitioner was provided written notice of the charge, which included the statement of facts upon which the disciplinary team based its decision; he attended the disciplinary hearing, and less than two weeks after the hearing, he was aware of the team's decision regarding his guilt and punishment, as evidenced by the substance of his administrative appeal of the decision to the warden (see Doc. 20, Ex. K).  The record also shows that Petitioner challenged the disciplinary decision through the administrative channels of the DOC and the state courts, claiming that the investigation was not impartial, the statement of facts omitted pertinent facts, the team denied his requests to view a photograph of the weapon and to call Officer Cunningham as a witness, and he was not provided written notice of the decision, and, he received substantive review of his claims in all avenues of appeal (see Doc. 20, Exs. K, L, M, N, O, R).  Additionally, the courts notes that Petitioner does not allege that he ever requested a copy of the written decision, which suggests Petitioner did not deem it necessary to effectively pursue his appeals.  Furthermore, Petitioner did not seek to amend his

mandamus petition upon receiving a copy of the written decision, which indicates that any earlier receipt of the decision was not necessary to effectively present his claims.[3]  In the absence of any showing that the five-month delay in Petitioner's receipt of the written decision prejudiced his ability to challenge the decision, the undersigned concludes that he has failed to establish a due process violation.

Finally, Petitioner appears to claim that prison officials withheld exculpatory evidence or information in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (see Doc. 23 at 2–6).  Neither the Supreme Court nor the Eleventh Circuit has extended the due process principles of Brady to prison disciplinary hearings. See, e.g., Kenney v. Barron, No. 06-16663, 239 Fed. Appx. 494, 495 (11th Cir. 2007) (unpublished) ("We have never held that the principles of Brady extend to prison disciplinary hearings, and we need not decide that issue in this case.").[4]  Therefore, Petitioner has failed to show that the state court's denial of relief was contrary to or an unreasonable application of clearly established Supreme Court law.

IV.    CONCLUSION

Petitioner has failed to demonstrate that the state court's denial of his claims concerning the disciplinary decision in Log #250-060073, which resulted in the loss of 360 days of gain time, was based upon an unreasonable determination of the fats, or was contrary to or an unreasonable application of clearly established Supreme Court law.  Therefore, Petitioner is not entitled to federal habeas relief.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter McNeil is substituted for James R. McDonough as a Respondent.

And it is respectfully **RECOMMENDED**:

1.       That the amended habeas petition (Doc. 11) be **DENIED**.

---

[3]The state court's written order denying Petitioner's mandamus petition refers only to Petitioner's original petition, filed April 11, 2006, and does not indicate that an amended petition was filed (see Doc. 20, Ex. R at 1).

[4]The undersigned cites Kenney v. Barron only as persuasive authority and recognizes that the opinion is not considered binding precedent.  See 11th Cir. R. 36-2.

2.      That all pending motions be **DENIED as moot**.

At Pensacola, Florida, this <u>29</u><sup>th</sup> day of January 2009.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

        **Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**